UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALTA GARRETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **JUDSON INDEPENDENT SCHOOL** | § | **SA-06-CA-0174 OG (NN)** |
| **DISTRICT,** | § | |
| | § | |
| **Defendant.** | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **Hon. Orlando Garcia**
      **United States District Judge**

### I.  Introduction

This memorandum and recommendation addresses the motion for summary judgment[1]

filed by defendant Judson Independent School District (the School District).  I have jurisdiction

to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the District

Court's order referring all pretrial matters to me for disposition by order or to aid the District

Court by recommendation where my authority as a Magistrate Judge is statutorily constrained.[2]

After considering the School District's motion and plaintiff Alta Garrett's response, I recommend

granting the motion, dismissing two of Garrett's claims, and entering summary judgment in favor

of the School District on the other claims.

---

[1] Docket entry # 47.

[2] *See* docket entry # 16.

## II.  Nature of the Case

This case is an employment discrimination lawsuit brought by a former school teacher. Garrett worked for the School District for 14 years.  Garrett complains that the School District did not renew her teaching contract at the end of the 2004-05 school year.  She maintains that the School District did not renew her contract because she engaged in protected conduct.  She alleges that after she engaged in her protected conduct, the school principal—Verna Ruffin—and an assistant school principal—Mollye Williams—retaliated against her by demoting her and denying her promotion opportunities, resulting in the non-renewal of her teaching contract. Garrett sued the School District, Ruffin, and Williams, asserting retaliation, unlawful employment discrimination, and various state law claims.

Before this case was referred to me, the District Court dismissed Garrett's state-law claims and claims against Ruffin and Williams.[3]  The motion before the District Court addresses Garrett's remaining claims.  The School District seeks a complete disposition of this case. Discovery closed on December 18, 2006.[4]  Trial is scheduled for October 15, 2007.[5]

## III.  Summary Judgment Standard

A defendant in a civil action may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure at any time.[6]  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3]Docket entry # 9.

[4]Docket entry # 25.

[5]Docket entry # 56.

[6]FED. R. CIV. P. 56.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7]  "A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact."[8]  If the movant meets this burden, the burden shifts to the non-movant to show that a fact question exists that precludes summary judgment.[9]

### Garrett's Texas Whistleblower Claim

Garrett has sued the School District under the Texas Whistleblower Act.  Garrett alleges that she "reported to the appropriate authorities that [the School District] had violated the guidelines of the Federal funding of the Content Mastery Center (CMC), when [the School District] moved students into CMC that were not eligible because of no IEP or ARD."[10]  She complains that once she reported the violation, the School District through Ruffin and Williams "instituted a campaign of unfounded charges of incompetence against [her] with an intention of eventually discharging her without good and just cause in violation of [her] contractual and tenure rights."[11]  The School District contends that it is entitled to summary judgment on Garrett's Whistleblower claim because Garrett failed to exhaust her administrative remedies.[12]

---

[7]*Id*.

[8]*FDIC v. McCrary*, 977 F.2d 192, 194 (5th Cir. 1992).

[9]*See McCrary*, 977 F.2d at 194.

[10]Docket entry # 1, ¶ 14.

[11]*Id*.

[12]Docket entry # 47, pp. 9-10.

The Texas Whistleblower Act prohibits a governmental entity from terminating or taking any other adverse personnel action against an employee who in good faith reports a violation of law by the employing governmental entity or a public employee of the entity to an appropriate law enforcement authority.[13]  To prevail under the Whistleblower Act, a plaintiff must show that (1) she was discriminated against for reporting a violation of the law and (2) a causal link exists between the reporting and the adverse employment action.[14]  The statute requires a plaintiff to pursue her administrative remedies before suing the governmental entity.[15]

To support its summary-judgment argument that Garrett did not exhaust her administrative remedies, the School District presented Garrett's deposition.  In her deposition, Garrett testified that she did not pursue the School District's administrative remedies.  Garrett testified as follows:

| The School District's Attorney: | . . . So you didn't want to go through [sic] district's administrative remedies which would have been to go through the grievance; is that correct? |
|---|---|
| Garrett: | That's correct. |
| The School District's Attorney: | And, in fact, you didn't go through the |

---

[13]TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004).  An appropriate law enforcement authority "includes at minimum any public authority having the power and duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the conduct appears to be a violation of the law."  *Upton County, Tex. v. Brown*, 960 S.W.2d 808, 822 (Tex. App.—El Paso 1997, no writ).

[14]*See Brown*, 960 S.W.2d at 823.

[15]*See* TEX. GOV'T CODE ANN. § 554.006(a) (Vernon 2004) ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.").

4

|  |  |
|---|---|
|  | grievance; correct? |
| Garrett: | Correct. |
| *** | |
| The School District's Attorney: | . . . So instead of going through the administrative procedures, you went directly to an agency; correct? |
| Garrett: | Yes.[16] |

This evidence shows that Garrett did not pursue her administrative remedies.  Having shown this, the burden shifts to Garrett to present summary-judgment evidence raising a fact question about whether she pursued her administrative remedies.

In response, Garrett argued that Texas courts do not require an employee to exhaust a school district's administrative remedies.  Instead, Garrett maintains, an employee need only initiate an in-place grievance to satisfy the Whistleblower statute's exhaustion requirements.  To show that she initiated the School District's administrative remedies, Garrett relies on two letters from attorney Michael Lattimer.[17]  Both letters are addressed to Marquette Maresh.  In the first letter, Lattimer asked for a postponement of "the hearing" because he had recently "received a massive amount of documents."  In the second letter, Lattimer requested "an open hearing" and asked for a continuation of the hearing date because he was still going over the massive documents.  Garrett did not explain the significance of the letters.

The Whistleblower Act requires a plaintiff to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or

---

[16]Docket entry #48, tab 3, pp. 132-3.

[17]*See* docket entry # 58, tab VII, exh. 3.

termination of employment or adverse personnel action before"[18] filing a lawsuit. "The employee must initiate the grievance procedures within 90 days after the alleged violation occurred. . . . If the employer does not render a decision within 60 days from the date the employee initiated the grievance, the employee may file suit in district court."[19]  Texas courts do not require a plaintiff to wait until the administrative process is complete; instead, Texas courts require plaintiffs to comply with these statutory prerequisites.[20]  This clarification doesn't help Garrett, however, because her deposition makes it clear that she did not—nor did she want to—file a grievance.  While she wasn't required to exhaust the School District's grievance process, she was required to initiate that process.  Lattimer's letters do not raise a fact question about whether Garrett initiated the School District's grievance procedure because Garrett testified that she did not authorize Lattimer to schedule a hearing.[21]

In addition to her argument about initiating the grievance procedure, Garrett asserted that she was not required to exhaust her administrative remedies because it would have been futile to do so.  Garrett did not identify a legal authority establishing an exception to the requirement that an employee must initiate a grievance before filing suit.  My research did not identify an

---

[18]Tex. Gov't Code Ann. § 554.006(a) (Vernon 2004).

[19]*Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no writ).

[20]*City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex. App.—San Antonio 2000, no writ) (explaining that complete exhaustion of administrative remedies is not required under the Whistleblower statute); *Rivera*, 93 S.W.3d at 320 (deciding that Whistleblower act requires public employees to initiate grievance procedures before filing suit, not exhaust the applicable grievance procedures).

[21]*See* docket entry # 48, tab 3, p. 122.

authority for an exception.[22]

Finally, Garrett contended that she exhausted her administrative remedies by filing a charge with the EEOC.  The Whistleblower statute, however makes it very clear that filing a charge with the EEOC does not satisfy the exhaustion requirement.  The statute clearly states that an employee must initiate action under the grievance or appeal procedures of the employing governmental entity.  Under Texas law, failing to do so deprives a court of jurisdiction.[23] Because initiating a governmental entity's grievance or appeal procedures is jurisdictional, the appropriate disposition of Garrett's Whistleblower claim is to dismiss for lack of jurisdiction rather than summary judgment.

### Garrett's Retaliation Claim

Garrett has also sued the School District for retaliation under chapter 21 of the Texas Labor Code.  Under chapter 21, "[a]n employer. . . commits an unlawful employment practice if the employer. . . retaliates or discriminates against a person who. . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."[24]  The School District contends that it

---

[22]*See Breaux v. City of Garland*, 205 F.3d 150, 162-3 (5th Cir. 2000) (observing that no Texas court has applied a futility exception to statutory, jurisdictional exhaustion requirements and refusing to create a futility exception under the Texas Whistleblower Act).

[23]*See Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d 374, 379 (Tex. App.—Eastland 2006, no writ) (explaining that plaintiff's failure to institute a grievance was a jurisdictional defect which precluded her from bringing her Whistleblower claim); *Gregg County v. Farrar*, 933 S.W.2d 769, 777 (Tex. App.—Austin 1996, writ denied) (stating a party who brings suit based entirely on a statutory cause of action must comply with the statutory prerequisites and that failure to comply deprives the court of jurisdiction).  *See also Breaux*, 205 F.3d at 162 ("The exhaustion requirement of the Texas Whistleblower Act is jurisdictional and, therefore, mandatory and exclusive.").

[24]TEX. LABOR CODE ANN. § 21.055 (Vernon 2006).

is entitled to summary judgment on Garrett's chapter 21 retaliation claim because Garrett cannot establish the necessary "but for" nexus between her protected activity and the non-renewal of her teaching contract.

> To establish a prima facie case of retaliation [under chapter 21], a plaintiff must show that 1) [s]he engaged in a protected activity, 2) an adverse employment action occurred, and 3) there was a causal connection between participation in the protected activity and the adverse employment decision.  Protected activities. . . include 1) opposing a discriminatory practice, 2) making or filing a charge, 3) filing a complaint, or 4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing.  A plaintiff asserting a retaliation claim must establish that, without [her] protected activity, the employer's prohibited conduct would not have occurred when it did.  That is, the plaintiff must establish a "but for" causal nexus between the protected activity and the employer's prohibited conduct. The plaintiff need not establish that the protected activity was the sole cause of the employer's prohibited conduct.[25]

"A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"[26]  If the plaintiff presents evidence of a prima facie case of retaliation, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action.[27]

Garrett's complaint does not specify the allegations that support her chapter 21 claim, but the only allegation that will support a claim under the definition of protected activity is "that the retaliatory actions taken against her were motivated by. . . opposing a discriminatory practice, making or filing a charge [with the EEOC], filing a complaint and testifying, assisting, or

---

[25]*Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376-7 (Tex. App.—Fort Worth 2006, no pet.) (internal citations omitted).

[26]*Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted).

[27]*See Herbert*, 189 S.W.3d at 376-7.

participating in an investigation or proceeding regarding an unlawful discriminatory practice."[28] The School District contends that Garrett cannot establish the necessary but-for nexus because the School District was unaware that Garrett had filed her charge with the EEOC until after the decision was made not to renew Garrett's teaching contract and that Garrett never complained about unlawful employment discrimination until she filed her charge.  The School District presented the following summary-judgment evidence to show it was unaware that Garrett had filed a charge with the EEOC until after the non-renewal decision was made and that no evidence exists that Garrett ever complained about unlawful employment discrimination.

First, the School District presented the EEOC's Notice of Charge of Discrimination and Request for Information.[29]  This document is dated September 7, 2005.  The notice is addressed to Ms. Sue Sanson, Judson Independent School District, and indicates that a charge of discrimination alleging a violation of chapter 21 had been filed with the EEOC.  The letter invited the School District to participate in the EEOC's Alternative Dispute Resolution process. A copy of Garrett's charge was attached to the letter.  Garrett's charge is dated September 6, 2005, and alleged, in part, that "[o]n/about March 30, 2005, [she] was not given ample time to prepare my defense with an attorney to react to a notice of non-renewal of my contract with this school district."  Under the section marked "[t]he particulars are," Garrett wrote, "[o]riginal received April 13, 2005."  The second document is the EEOC's Notice of Charge of Discrimination.[30]  The notice is addressed to Ms. Sue Sanson, Judson Independent School, and

---

[28]Docket entry # 1, ¶ 16.

[29]Docket entry # 48, tab 1.

[30]Docket entry # 48, tab 2.

indicates that Garrett had filed a charge of discrimination based on race and sex.  The notice is

stamped as received on September 12, 2005.  The third document is Garrett's deposition

testimony in which she testified that she was still employed by the School District on April 13,

2005[31]—the date Garrett identified as the date of her original charge.  She also testified that she

did not tell anyone at the School District that she had filed a charge with the EEOC.[32]  She

further testified that she received the School District's non-renewal notice on March 30, 2005.[33]

This evidence shows that the School District planned not to renew Garrett's  teaching contract as

early as March 30, 2005, but that the School District did not know about Garrett's charge of

discrimination until September 12, 2005.  As a result, the evidence shows that the School District

did not know that Garrett had filed a charge of discrimination when it made the decision not to

renew Garrett's contract.  Garrett also testified about a grievance she filed in 2004 about a

performance appraisal.[34]  She stated that the grievance was not about race or gender.  She

admitted that she never complained about discrimination based on race or gender.[35]  The

evidence shows that no casual connection exists between the non-renewal decision and the filing

of charge of discrimination—because the non-renewal decision was made over five months

before the charge was filed.  Likewise, no casual connection exists between the non-renewal

decision and a complaint about discrimination because Garrett never complained about unlawful

---

[31]Docket entry # 48, tab 3, p. 70.

[32]Docket entry # 48, tab 3, p. 70.

[33]Docket entry # 48, tab 3, p. 71.

[34]Docket entry # 48, tab 3, p. 81.

[35]Docket entry # 48, tab 3, p. 169.

discrimination until she filed her charge.  Consequently, the School District's summary-judgment evidence entitles it to summary judgment on this claim unless Garrett presents some evidence to raise a fact question about a casual connection.[36]

Garrett did not address the School District's argument, but instead asserted—without explaining how or why—that her allegations under the Texas Whistleblower Act constitute protected activity under chapter 21.  The conduct forming the basis of those allegations, however, does not constitute protected activity under chapter 21.  The allegations other than "the retaliatory actions taken against her were motivated by. . . opposing a discriminatory practice, making or filing a charge [with the EEOC], filing a complaint and testifying, assisting, or participating in ana investigation or proceeding regarding an unlawful discriminatory practice" do not constitute protected activity because they do not allege that Garrett opposed a discriminatory practice; filed a complaint; or testified, assisted, or participated in any manner in an investigation, proceeding, of hearing.[37]  Garrett cannot raise a fact question by asserting that her complaints about the CMC program constituted protected activity under chapter 21 because that conduct does not constitute activity that chapter 21 protects.  Chapter 21 specifically applies to conduct "under [that] chapter"—that is, employment discrimination based on "race, color, disability, religion, sex,

---

[36]*Accord Marsaglia v. Univ. of Tex., El Paso*, 22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. denied) (explaining that the appellant had not shown a causal connection between the filing a charge of discrimination and the denial of tenure because no evidence existed that the university president knew about the conduct the appellant had complained about).

[37]*Accord Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 681 (Tex. App.—Houston [14 Dist.] 2007, no pet.) (determining that asking two people if there was anything he could do to help his mother and requesting medical-insurance forms did not constitute opposing a discriminatory practice; making or filing charge; filing a complaint; or testifying, assisting, or participating in an investigation, proceeding, or hearing—the plaintiff did not did not engage in an activity protected by section 21.055).

national origin, or age."[38]  Reporting violations of other law—what Garrett relies on—is

protected by the Whistleblower Act.  Garrett cannot rely on her allegations about reports of

alleged violations of law in regard to the CMC program to support her chapter 21 retaliation

claim.

In addition to her argument about protected activity, Garrett suggests that the dramatic

decline in her performance ratings raises a fact question that precludes summary judgment on her

chapter 21 retaliation claim.  Although a decline in performance ratings of an employee who has

complained about unlawful employment discrimination may serve as circumstantial evidence that

an employer's non-discriminatory reason for an adverse employment decision is a pretext for

unlawful discrimination,[39] Garrett's suggestion fails for at least two reasons.  First, evidence that

her performance ratings dropped after she complained about the CMC program does not show

that she engaged in protected activity under chapter 21.  Second, the argument does not address

Garrett's burden to present evidence of a prima facie case of retaliation because it does not show

that the School District knew that she had filed a charge of discrimination.  Garrett's suggestion

is an irrelevant argument, supported with summary-judgment evidence that is irrelevant to a

chapter 21 claim.[40]  Neither Garrett's arguments nor her summary-judgment evidence raises a

---

[38]TEX. LABOR CODE ANN. § 21.051 (Vernon 2006).

[39]*See Medina*, 238 F.3d at 686.

[40]*See* docket entry # 58, tab 7, exhs. 1 (Garrett's employment records) & 2 (Garrett's TAKS benchmark results); tab 1, exhs. 2 (School District's special conference form, dated Feb. 2, 2002, about Garrett's distribution of memo about placements in CMC to teachers without conferring with school principal) & 3 (Garrett's level one grievance about a performance evaluation) & 4 (letter from Charlie Neumeyer stating that he was granting relief on the grievance based on lack of appropriate documentation by administrators).

fact question about whether the School District knew that she filed an charge of discrimination with the EEOC before the decision was made not to terminate Garrett's teaching contract.  Thus, Garrett has failed to raise a fact question to preclude summary judgment.  The School District is entitled to summary judgment on Garrett's chapter 21 claim.

### Garrett's Age Discrimination Claim

Garrett was 58 years old when she was notified that her teaching contract would not be renewed.  She has sued the School District for age discrimination.  Garrett alleges that the School District "intentionally discriminated against [her] because of her. . . age in violation of Title VII by intentionally engaging in unlawful employment practices by instituting a campaign of disciplinary actions . . . because [she] exercised her First Amendment constitutionally protected right to complain about students violating [the School District's] disciplinary rules and policies."[41]  The School District maintains it is entitled to summary judgment on this claim because Garrett failed to exhaust her administrative remedies.[42]

Although Title VII does not apply to Garrett's claim, the Age Discrimination in Employment Act (ADEA) prohibits employers from "discriminat[ing] against any individual [who is at least 40 years old] with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ."[43]  A plaintiff suing for age discrimination

---

[41]Docket entry # 1, ¶ 13.

[42]Docket entry # 47, p. 14.

[43]29 U.S.C. § 623(a).

13

must file a timely administrative charge with the EEOC as a precondition to filing her lawsuit.[44]
In Texas, the charge must be filed within "300 days after the alleged unlawful practice occurred. .
. ."[45] "[A] Texas employee's ADEA claims are normally time-barred if the employee fails to file
an age discrimination charge with the EEOC within 300 days from the date of the unlawful
employment practice."[46] The School District contends that Garrett's age discrimination claim is
time-barred because she cannot show that she filed an administrative charge. The School District
presented Garrett's charge of discrimination to show that no fact issue exists about whether
Garrett filed a charge based on age discrimination.

The EEOC's charge of discrimination form includes a block that reads, "cause of
discrimination based on (check appropriate box(es))." Garrett checked the boxes for race, sex,
retaliation and other. She did not check the box for age. In identifying the particulars of her
allegations, Garrett complained that she was treated differently from "white females" because she
is a "black female," and alleged that she was "discriminated against because of [her] Race (black)
and Sex (female). . . ."[47] Garrett did not charge that she was discriminated against based on
age—the word "age" does not appear in the charge. This evidence demonstrates that Garrett did
not file a charge based on age discrimination because the charge does not include an allegation

---

[44]29 U.S.C. § 626(d) ("No civil action may be commenced. . . until 60 days after a charge alleging
unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such
a charge shall be filed. . . within 180 days after the alleged unlawful practice occurred. . . .").

[45]*See* 29 U.S.C. § 626(d)(2); *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir. 1995)
(explaining that a Texas plaintiff cannot take legal action in an ADEA case unless she has filed an
administrative charge within 300 days of the last act of discrimination).

[46]*Tyler v. Union Oil Co. of Cal*., 304 F.3d 379, 384 (5th Cir. 2002).

[47]Docket entry # 48, tab 1.

about age.  The evidence shows that no fact question exists about whether Garrett filed a charge based on age discrimination.  However, because "the scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,"[48] Garrett can show that her claim is not time-barred by presenting evidence that the EEOC considered age discrimination during its investigation.

Garrett presented no evidence showing that the EEOC considered age discrimination.  Instead, she simply insisted that she exhausted her age discrimination claim by checking the "other discrimination" box.  Garrett, however, indicated on her charge that "other" was discrimination under the Texas Commission on Human Rights Act—she specified the "other discrimination" as discrimination under the "Tchr Act."[49]  Even though the Texas Commission on Human Rights Act prohibits discrimination based on age, it also prohibits discrimination based on race, color, disability, religion, sex, and national origin.[50]  In the absence of any evidence showing that the EEOC investigated a charge of age discrimination, it is unreasonable to construe a charge of "other"  discrimination as a charge of "age" discrimination where the charge form included a block for the employee to indicate that her discrimination was caused by "age."   Garrett's charge did not include an allegation of age discrimination and no evidence shows that the EEOC considered an allegation of age discrimination.  Because a timely charge is

---

[48]*Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000).

[49]In her deposition, Garrett testified that she checked "other" because she wasn't certain about what she should be checking and she wanted to cover all of the bases.  See docket entry # 58, tab 4, p. 68.

[50]*See* TEX. LABOR CODE ANN. § 21.051 (Vernon 2006).

a precondition to filing suit,[51] Garrett's claim age discrimination claim is time-barred.  The

District Court should dismiss the claim as time-barred.

### Garrett's Title VII Claims

Garrett has sued the School District for employment discrimination based on race and sex

under Title VII.  Garrett alleges that the School District "intentionally discriminated against [her]

because of her race, color, [sex]. . . in violation of Title VII by intentionally engaging in unlawful

employment practices by instituting a campaign of disciplinary actions . . . because [she]

exercised her First Amendment constitutionally protected right to complain about students

violating [the School District's] disciplinary rules and policies."[52]  The School District contends

that it is entitled to summary judgment on this claim because Garrett can present no evidence

raising a fact question about whether its reasons for not renewing Garrett's contract was a pretext

for unlawful discrimination.

Title VII of the Civil Rights Act of 1964—42 U.S.C. § 2000e-2—makes it unlawful for

an employer to "to discharge any individual, or otherwise to discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment, because of

such individual's race, color. . . [or] sex. . . ."[53]  "To establish this prima facie case under Title

VII, the plaintiff must prove that she is a member of a protected class, she was qualified for the

position that she held, she was discharged, and after her discharge was replaced with a person

---

[51]*See Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 439-40 (5th Cir. 1986).

[52]Docket entry # 1, ¶ 13.

[53]42 U.S.C. § 2000e-2(a)(1).

who is not a member of the protected class."[54]

> If a plaintiff is successful in establishing a prima facie case of discrimination, the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination. If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment.[55]

The School District does not contest whether Garrett can establish a prima facie case of unlawful employment discrimination. Instead, the School District presented summary-judgment evidence of a non-discriminatory reason for not renewing Garrett's contract and asserted that no evidence exists that shows this reason was a pretext for unlawful discrimination.

The School District maintains that it did not renew Garrett's contract because it received over 40 complaints from parents about Garrett and numerous student complaints, evidencing Garrett's inability to effectively continue in her role as a school teacher. As evidence of this reason, the School District presented the following summary-judgment evidence. First, the School District presented Ruffin's affidavit.[56] In the affidavit, Ruffin discussed Garrett's problems as a teacher and her efforts to rehabilitate Garrett. Ruffin attested that she received "numerous complaints during the 2004-2005 school year regarding Ms. Garrett's performance, poor communication, and harsh treatment of students." She stated that over 40 parents complained about Garrett's "refusal to answer student questions, failure to communicate about

---

[54]*Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

[55]*Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007) (internal citations omitted).

[56]Docket entry # 48, tab 8.

student grades or behavior, and failure to respond to parent contact in a timely manner." She further stated that over 30 parents had asked that their child be removed from Garrett's classroom. Ruffin explained that students "indicated that they were afraid of Ms. Garrett because she yelled or snapped at them" and one student reported that Garrett "grabbed her by the lapels of her jacket." Ruffin discussed her attempts to help Garrett improve her performance, and how her attempts failed to produce improved performance and instead resulted in insubordination. Ruffin attested that she recommended non-renewal of Garrett's teaching contract because she was concerned with Garrett's work deficiencies and her conduct toward students. Second, the School District presented evidence documenting complaints about Garrett's treatment of students and Ruffin's documentation of her efforts to counsel Garrett, to include documentation of disciplinary actions.[57] Third, the School District presented Garrett's deposition testimony acknowledging receipt of letters of reprimand and summaries of conferences about student failure rates and noncompliance with directives, and admitting that she never complained that she was being discriminated against because of her race or sex.[58] This evidence established a legitimate, nondiscriminatory reason for not renewing Garrett's contract. This established, the burden shifts to Garrett to present substantial evidence that the School District's reason was pretext for discrimination.

Garrett made three arguments about why the School District's reason for not re-newing her contract was a pretext for unlawful discrimination: (1) the School District is incredible because the School District superintendent—an in-law to Ruffin—hired Ruffin as school

---

[57]Docket entry # 48, tab 7.

[58]*See* docket entry # 48, tab 3, pp. 166-74.

principal, (2) all of Ruffin's decisions are illegitimate because she was hired as a result of

nepotism, and (3) Garrett experienced a dramatic decline in performance ratings under Ruffin.  In

an attempt to demonstrate how these arguments raise a fact question about pretext, Garrett

presented the following summary-judgment evidence.  First, Garrett presented her proposed

witness list.[59]  Garrett listed 52 people she asserts "may know information relevant to the facts

made the basis of this lawsuit.  Second, Garrett presented an email from Stacey Decuir, who

Garrett characterizes as white and younger.[60]  Garrett relies on the email to support her assertion

that her requests to be transferred to a different school were refused, but requests by white

teachers were approved.  The email reflects that Decuir responded to an inquiry from Garrett to

provide information for Garrett's attorney.  But because Garrett did not include the page of the

email that reflects Garrett's request, Decuir's response appears to be little more than gibberish.

The email seems to indicate that Decuir had been transferred to a new school.

Third, Garrett presented her entire deposition.[61]  She did not identify the portions of her

deposition that purportedly raise a fact question about pretext.[62]  She only asserted that she can

provide both direct and circumstantial evidence of blatant discrimination by the School District

against her.[63]  Out of an abundance of caution—and to ensure Garrett is not prejudiced by her

attorney's failure to direct the Court to the relevant portions of her deposition—I reviewed the

---

[59]Docket entry # 58, tab 7, exh. 8.

[60]Docket entry # 58, tab 7, exh. 10.

[61]Docket entry # 58, tab 4.

[62]Docket entry # 58, tab 1, p. 25.

[63]*See id.*

entire deposition to identify any direct and circumstantial evidence of blatant discrimination by the School District against Garrett.

In her deposition, Garrett testified that she began working for the School District in 1991 as a reading teacher[64] at Kitty Hawk.[65]   At that time, Garrett's sister also worked for the School District as a teacher.[66]   Garrett was transferred to Woodlake Hills Middle School in 1997.  At that time, her sister was the school's assistant principal.[67]   Garrett's sister was later promoted to school principal.[68]   Garrett worked under her sister's supervision[69] until 2001 when Ruffin became principal.[70]   Garrett testified that Dr. Zukowski—Ruffin's former brother-in-law and School District superintendent—did not renew her sister's contract and hired Ruffin as principal.[71]   Garrett thought the decision to remove her sister as principal was unfair and she was unhappy with the decision.[72]   She testified that she did not hold it against either Dr. Zukowski or Ruffin.[73]   When questioned about the allegations in her charge of discrimination, Garrett

---

[64]Docket entry # 58, tab 4, pp. 38 & 48.

[65]*Id*. at p. 51.

[66]*Id*. at p. 48.

[67]*Id*. at p. 52.

[68]*Id*. at p. 56.

[69]*Id*. at p. 53.

[70]*Id*. at p. 55.

[71]*Id*. at pp. 56-7.

[72]*Id*. at pp. 57-8.

[73]*Id*. at p. 61.

explained that Ruffin had done some things that were not in line with the way certain federal programs should be run.[74]  She stated that Ruffin had been mixing students in the CMC program, a program federally funded for special education, with students in the ACE program, a program for students who were identified as failing.  Garrett said that in 2001 shortly after Ruffin arrived,[75] she told Ruffin that she could not mix the students, but Ruffin went ahead with her plans.[76]  She testified that Ruffin responded by writing her up because Garrett distributed a memo—without Ruffin's approval—to teachers about not mixing students and by removing Garrett from the ACE program.[77]  She explained that after that, "[t]he door was open for [Ruffin] to start the attacks."[78]  Garrett testified from then on Ruffin set her up in the classroom, giving Ruffin the opportunity to set up conferences and confrontations.[79]

In her deposition, Garrett stated that she never complained about being removed from the ARC program, but that she filed a grievance in 2004 about her performance appraisal.[80]  She did not, however, complain about discrimination based on race or sex—she complained only about her appraisal.[81]  When questioned about how white females were treated differently than she was,

---

[74]*Id*. at pp. 66-71.

[75]*Id*. at p. 142.

[76]*Id*. at pp. 71-6.

[77]*Id*. at pp. 76-8.

[78]*Id*. at p. 78.

[79]*Id*. at pp. 78-9.

[80]*Id*. at p. 81.

[81]*Id*. at p. 81.

Garrett named five women who were treated differently,[82] but she could not specify how they were treated differently.  She stated only two white females were not removed from the ACE program and that Ruffin would listen to them.[83]  Oddly, Garrett stated that Ruffin is Afro-American and female.  She accused Ruffin of using her assistant principals— specifically, Williams—to mark her down on her appraisals.  When asked if she thought Williams marked her down because she is a black female, Garrett answered, "I don't know why she did it. . . I can't say it's just because I'm a Black female.  She was doing what she was directed to do."[84]  She insisted that being a black female had something to do with Ruffin removing her from the ACE program.[85]  She asserted that Ruffin manipulated parents to complain about her, but could not explain how.[86]  She also accused Ruffin of manipulating students to ask to leave her classroom, but could not explain how Ruffin did that or how the purported manipulation was related to race or gender.[87]

Fourth, Garrett presented the School District responses to her requests for admissions.[88]  As with her deposition, she did not identify the particular responses that purportedly raise a fact

---

[82]*Id*. at pp. 91-3.

[83]*Id*. at pp. 79, 93-4 & 158-9.

[84]*Id*. at p. 96.

[85]*Id*. at p. 98.

[86]*Id*. at p. 114.

[87]*Id*. at pp. 115-19.

[88]Docket entry # 58, tab 6, exhs. 1 & 2.

question about pretext.[89]  She only asserted that she can provide both direct and circumstantial

evidence of blatant discrimination by the School District against her.[90]  The School District's

responses are consistent with its position in this lawsuit—that Garrett's teaching contract was not

renewed because it received complaints about Garrett from students and parents, evidencing

Garrett's inability to effectively continue in her role as a school teacher.

        None of this evidence raises a fact question about the School District's reason for not re-

newing Garrett's contract.  Nothing casts doubt on the School District's credibility.  Nothing

suggests Ruffin's assessments of Garrett's performance were illegitimate or that Ruffin was hired

as a result of nepotism.  Nothing indicates that the decline in Garrett's performance ratings was

motivated or caused because of her race or gender.  Garrett has failed to raise a fact question,

entitling the School District to summary judgment on Garrett's Title VII claims.

### The School District's Final Request

        The School District also asked for summary judgment on Garrett's constitutional claims.

This request was made out of an abundance of caution as the School District maintains that such

claims are not properly before the Court.  The District Court need not address the School

District's summary-judgment argument about constitutional claims, however, because Garrett's

complaint cannot be reasonable read to bring constitutional claims.  The complaint includes only

vague references to violations of constitutional provisions.  In contrast, the complaint identifies

Garrett's causes of action as "counts" and specifically labels each cause of action.

        For example, Garrett's "Count 1" is labeled "Discrimination under Title VII."  In the

---

[89]Docket entry # 58, tab 1, p. 25.

[90]*See id*.

section that follows this label, Garrett alleges that the defendants "intentionally discriminated against Ms. Garrett because of her race, color, sex and age in violation of Title VII by intentionally engaging in unlawful employment practices by instituting a campaign of disciplinary actions against Ms. Garrett because Ms. Garrett exercised his First Amendment constitutionally protected right to complain about student violating Respondent's disciplinary rules and procedures."[91]  By including the language "intentionally discriminated against Ms. Garrett because of her race, color, sex and age in violation of Title VII" and "by intentionally engaging in unlawful employment practices," Garrett indicated her intent to sue the defendants for employment discrimination prohibited by Title VII.  This language satisfied the requirement to "set[] forth a claim for relief. . . ."[92]  The language "because Ms. Garrett exercised his First Amendment constitutionally protected right to complain" satisfied the requirement to provide adequate notice by stating the facts that gave rise to the claim.[93]  The language does not give rise to a separate claim.

Garrett's "Count 2" is labeled "Retaliation Under Chapter 21 of the Texas Labor Code, § 21.001 et. seq. Texas Labor Code, As Amended, Specifically § 21.055 and Under the Texas Whistle Blower Act."[94]  In the section following this label, Garrett alleges that the defendants "committed unlawful employment practices against Ms. Garrett because Ms. Garrett engaged in

---

[91]Docket entry # 1, ¶ 13.

[92]Fed. R. Civ. P. 8(a).

[93]*See Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990) ("[T]he pleadings must provide notice of the circumstances which give rise to the claim.").

[94]Docket entry # 1, p. 5.

activity protected under the Texas Labor Code; the Texas Whistleblower Act; and under the First Amendment of the United States Constitution."[95]  She stated the specific facts that gave rise to her claim and then asserted that "[t]he effect of the practices complained of. . . has been to deprive her equal employment opportunities under the Fifth and Fourteenth Amendment[s], and adversely affect her status as an employee, because of her engagement in a protected activity."[96] Two paragraphs down, Garrett asserted that the School District "violated Ms. Garrett's rights under the teacher discharge or tenure statute and Due Process clause of the Constitution of the United States by failing to give Ms. Garrett adequate notice of her right to a hearing and by failing to give Ms. Garrett sufficient notice of the charges to enable Ms. Garrett [to] prepare a defense."[97]  Two paragraphs later, Garrett asserted that the School District "violated Ms. Garrett's rights under the teacher discharge and tenure statute and Due Process clause of the Constitution of the United States by refusing an extension of time for Ms. Garrett to prepare for her hearing. . . ."[98]

By including the language "committed unlawful employment practices against Ms. Garrett because Ms. Garrett engaged in activity protected" and "because of her engagement in a protected activity," Garrett indicated her intent to sue the defendants for the retaliation prohibited by chapter 21 of the Texas Labor Code and by the Texas Whistleblower Act.  This language

---

[95]Docket entry # 1, ¶ 14.

[96]*Id*. at ¶ 15.

[97]*Id.* at ¶ 17.

[98]*Id*. at ¶ 19.

satisfied the requirement to "set[] forth a claim for relief. . . ."[99]  Considering the label for Count 2, it is unreasonable to construe the language "under the First Amendment of the United States Constitution," "under the Fifth and Fourteenth Amendment[s]," and "under the. . .Due Process clause of the Constitution of the United States" as stating an affirmative claim for relief.  Garrett specifically enumerated her other claims for relief—"Count 3. - Defamation,"[100] "Count 5. - Invasion of Privacy,"[101] "Count 6. - Civil Conspiracy,"[102] "Count 7. - Intentional Infliction of Emotional Distress,"[103] and "Count 8. - Negligence."[104]  Under these circumstances, it is unreasonable to construe the language—"under the First Amendment of the United States Constitution," "under the Fifth and Fourteenth Amendment[s]," and "under the. . .Due Process clause of the Constitution of the United States"—as anything other than superfluous language attempting to explain why Garrett's complaints about the CMC program were protected conduct and to provide notice of the facts that gave rise to Garrett's claims under chapter 21 and the Whistleblower Act.[105]

Moreover, Garrett's complaint does not mention the legal authority for bringing a constitutional claim against a public entity—42 U.S.C. § 1983.  Although Garrett argued in her

---

[99]FED. R. CIV. P. 8(a).

[100]*Id*. at p. 7.

[101]*Id*. at p. 10.

[102]*Id*. at p. 11.

[103]*Id*.

[104]*Id*. at p. 12.

[105]*See Walker*, 904 F.2d at 277.

response to the motion for summary judgment that other provisions exist to enable her to bring

constitutional claims, those authorities simply do not fit.  Section 1343 to title 28 is a

jurisdictional provision that provides that the district court "shall have original jurisdiction of any

civil action authorized by law. . . ."[106]  The provision does not authorize a civil action.  Section

2000e to title VII prohibits employment discrimination "because of such individual's race, color,

religion, sex, or national origin. . . ."[107]  It does not prohibit discrimination based on the exercise

of the First Amendment's protection of free speech.  Section 1981 to title 42 prohibits

discrimination based on race, but it does not protect a person's exercise of free speech absent

race-based discrimination.  Even if Garrett had sued for race-based discrimination under § 1981,

her claim for relief would have to be based on race-based discrimination, not the exercise of

rights under the First Amendment.  The ADEA prohibits employment discrimination because of

an individual's age, where the individual is over 40.  It does not prohibit the exercise of rights

under the First Amendment.  In contrast, section 1983 specifically provides for a civil action

against a public entity for the "deprivation of any rights, privileges, or immunities secured by the

Constitution and laws."[108]  Garrett labeled numerous other claims for relief as counts in her

complaint, but she did not label a count as the deprivation of constitutional rights, the deprivation

of civil rights, a deprivation of rights under section 1983, or anything similar to suggest she

intended to sue the School District for violations of constitutional rights.  She did not assert that

---

[106]28 U.S.C. § 1343(a).

[107]42 U.S.C. § 2000e-2(a).

[108]42 U.S.C. 1983.

the School District acted under color of state law—an element of a § 1983 claim.[109]  Garrett asks

in the alternative that she be permitted to amend her complaint to incorporate claims under §

1983, but it is simply too late for that.  Not only has the statute of limitations for such claims

expired, Garrett has never indicated an intent to bring such claims until now.  Allowing her to

amend her complaint would be extraordinarily prejudicial to the School District.

### Recommendations

Because Garrett did not initiate the School District's grievance or appeal procedures, and

because failing to do so deprives a court of jurisdiction, I recommend DISMISSING Garrett's claim

under the Texas Whistleblower Act for lack of jurisdiction.  Garrett cannot establish the

necessary "but for" nexus between the filing of her EEOC charge and the non-renewal of her

teaching contract, and therefore, I recommend SUMMARY JUDGMENT in favor of the School

District on Garrett's retaliation claim under chapter 21 of the Texas Labor Code.  Because

Garrett failed to file a timely charge of discrimination based on age discrimination, I recommend

DISMISSING Garrett's age discrimination claim.  Garrett failed to raise a fact question about

whether the School District's reason for not renewing her teaching contract was a pretext for

unlawful discrimination, and consequently, I recommend SUMMARY JUDGMENT in favor of

the School District on Garrett's Title VII claims.  Garrett's complaint cannot be reasonably read

as bringing constitutional claims.  Garrett has never affirmatively indicated that she seeks to hold

the School District liable for violations of constitutionally protected rights and she should not be

permitted to do so now.  If the District Court agrees with these recommendations, it should

---

[109]*See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("This second element requires that
the plaintiff show that the defendant acted 'under color of law.'").

GRANT the School District's motion for summary judgment (docket entry # 47) and DENY

Garrett's request to amend her complaint.  If the District Court disagrees with my analysis of

Garrett's complaint in regard to constitutional claims, I will evaluate such claims further.  If the

District Court accepts my analysis and my recommendations, no unresolved claims or parties will

remain.[110]

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

recommendation on all parties who have entered an appearance, by either (1) electronic

transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of

Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this Memorandum and Recommendation must be filed within 10 days after

being served with a copy of same, unless this time period is modified.[111]  **Such party shall file**

**the objections with the Clerk of the Court, and serve the objections on all other parties and**

**the Magistrate Judge.**   A party filing objections must specifically identify those findings,

conclusions or recommendations to which objections are being made and the basis for such

objections; the District Court need not consider frivolous, conclusive or general objections.  A

party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

---

[110]In the event a party objects to this memorandum and recommendation and the District Court conducts a *de novo* review, please observe that some of Garrett's summary-judgment evidence has been stricken from the record.  *See* docket entry # 77.

[111]28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

District Court.[112]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[113]

      **SIGNED** on May 20, 2007.

                                          NANCY STEIN NOWAK
                                          UNITED STATES MAGISTRATE JUDGE

---

[112]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[113]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).